**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| MORRE-TEC INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants. | Court No. 1:26-cv-3822 |

# COMPLAINT

## I. INTRODUCTION

1. Plaintiff Morre-Tec Industries, Inc. ("Plaintiff") is a U.S.-based importer of merchandise subject to certain challenged customs duties.

2. Starting in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act ("IEEPA") as the basis for imposing significant new tariffs on goods imported from nearly every foreign country, including countries from which Plaintiff sources its products (the "IEEPA Duties"). Plaintiff has been required to pay the IEEPA Duties on its imports.

3. In February 2026, the United States Supreme Court ruled that IEEPA provides no authorization to impose tariffs. *See Learning Resources et. al. v. Trump, President of the U.S., et. al.*, No. 24-1287, slip op. at 20–21 (U.S. Feb. 20, 2026) (hereinafter "*Learning Resources*"); *see also V.O.S. Selections, Inc. v. Donald J Trump,* 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd,* 149 F.4th 1312 (Fed. Cir. 2025).

4. On the same day the opinion in *Learning Resources* was issued, President Trump issued an executive order invalidating all prior executive orders imposing duties under IEEPA and ordering that that such duties no longer be collected. *See* Exec. Order No. 14389, *Ending Certain Tariff Actions*, 91 Fed. Reg. 9437 (Feb. 25, 2026). However, the President's order was silent on the process for obtaining refunds.

5. Defendants continued to apply the IEEPA Duties to new entries until at least February 24, 2026. *See* U.S. Customs & Border Prot., CSMS # 67834313 - Ending Collection of International Emergency Economic Powers Act Duties (Feb. 22, 2026).

6. As part of a court-supervised process to address liquidation, reliquidation, and refund of such duties on a uniform basis, the United States has publicly indicated that it is undertaking programmatic updates to its existing Automated Commercial Environment ("ACE") system by adding the Consolidated Administration and Processing of Entries ("CAPE") functionality to administer refunds of duties found to be unlawful.

7. While new ACE/CAPE functionality is being developed, Defendants continue to liquidate entries subject to IEEPA Duties.

8. Despite the fact that this Court, the Federal Circuit, and the Supreme Court have already held that all duties levied pursuant to IEEPA were void *ab initio*, this action is nonetheless required because importers still face considerable uncertainty as to whether Defendants will refund all IEEPA duties paid by importers in the absence of a lawsuit. *See Learning Resources*, slip op. at 20–21.

9. Accordingly, Plaintiff requests a full refund of all IEEPA Duties Plaintiff has paid, regardless of liquidation status, and interest at the legal rate.

## II. PARTIES

10. Plaintiff is a U.S. company incorporated in New York that has been assessed and paid IEEPA Duties.

11. Defendant United States Customs and Border Protection ("CBP") is an agency within the U.S. Department of Homeland Security, headquartered in Washington, D.C. CBP is charged with administering the collection of tariffs, duties, and taxes on imported goods.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity. The United States received the IEEPA Duties and is a statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581. Section 1581 also waives the United States' sovereign immunity for claims such as those asserted in this action. *See Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001).

## III. JURISDICTION

13. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025).

14. This Court exercises the same legal and equitable authority as a United States District Court. *See* 28 U.S.C. § 1585. In actions brought under 28 U.S.C. § 1581, this Court is empowered to enter monetary judgments against the United States and to grant all appropriate forms of relief, including declaratory and injunctive remedies. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Plaintiff has standing to pursue this action because, as the importer of record, it paid duties that were unlawfully assessed and therefore suffered direct and concrete economic injury. That injury is fully redressable by this Court through any form of appropriate relief, including (i) declaratory relief confirming Plaintiff's entitlement to refunds of all unlawfully collected duties; (ii) injunctive relief directing CBP to provide such refunds through the updated ACE/CAPE system

or any analogous administrative mechanism; or (iii) a monetary judgment for the amounts unlawfully collected should administrative processes prove inadequate or incomplete.

## IV. FACTUAL AND LEGAL BACKGROUND

16. Implementation of the IEEPA Duties was effected by changes to the Harmonized Tariff Schedule of the United States ("HTSUS"). A short history of the IEEPA Duties is outlined below.

***The Trafficking Tariffs***

17. On February 1, 2025, the President issued the "Trafficking Tariffs"—three country-specific executive orders under IEEPA imposing additional duties on imports from Canada (EO 14193),[1] Mexico (EO 14194),[2] and the People's Republic of China ("PRC") (EO 14195).[3]

18. In each Trafficking Tariff, the President declared an unusual and extraordinary threat tied to drug trafficking and associated public-health and security harms, and invoked IEEPA as the asserted authority to impose duties to address those emergencies. The amount and active collection of these duties fluctuated by further executive orders over time.

***The Reciprocal Tariffs***

19. Subsequently, the President announced a global "Reciprocal Tariff" regime on April 2, 2025 via Executive Order 14257,[4] declaring a national emergency premised on large and persistent annual U.S. trade deficits and lack of reciprocity in tariff rates.

---

[1] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9113 (Feb. 7, 2025).
[2] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border,* 90 Fed. Reg. 9117 (Feb. 7, 2025).
[3] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9121 (Feb. 7, 2025).
[4] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15041 (Apr. 7, 2025).

20. EO 14257's findings concluded that disparate tariff rates/non-tariff barriers, and certain foreign economic policies suppressing wages and consumption collectively pose an unusual and extraordinary threat to U.S. national and economic security—thus warranting action under IEEPA.

21. This action set a baseline 10% duty on nearly all imports, plus higher country-specific rates listed in Annex I to EO 14257, with multiple adjustments in subsequent executive orders.

***Additional IEEPA Tariffs***

22. In the summer of 2025, President Trump announced additional IEEPA tariffs against Brazil and India (collectively, the "Additional IEEPA Tariffs"). The tariffs against Brazil were issued July 30, 2025 to address a national emergency based on that country's alleged political persecution of its former president.[5] The tariffs against India were issued August 6, 2025 to address a national emergency based on India's alleged violation of sanctions imposed against the Russian Federation.[6]

23. As with the Reciprocal and Trafficking Tariffs, the Additional IEEPA Tariffs rely on purported authority under IEEPA which has since been invalidated.

***Liquidation, the Role of CBP, and the Reliquidation Authority of the Court***

24. CBP was responsible for the implementation of the IEEPA Duties, a process it conducts by assessing the relevant tariff rates under the HTSUS and culminating in a process known as "liquidation." "Liquidation" is the final computation or ascertainment of duties on entries for consumption. *See* 19 C.F.R. § 159.1.

25. Once CBP "liquidates" an entry, it notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b). Liquidation—unless extended—

[5] Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739 (Jul. 30, 2025).
[6] Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (Aug. 6, 2025).

must happen within one year. *See* 19 U.S.C. § 1504(a). However, CBP may extend the deadline for liquidation for a further year. *See* 19 U.S.C. § 1504(b)(2); 19C.F.R. § 159.12(a)(l)(ii). Liquidation typically occurs 314 days from entry.

26. Once an entry has liquidated, the importer of record generally has 180 days to file a protest if the liquidation is protestable. This protest asks CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514. CBP may voluntarily reliquidate an entry within 90 days of liquidation. *See* 19 C.F.R. § 173.3.

27. In similar contexts, both this Court and the Federal Circuit have emphasized that importers may lack any legal entitlement to recover duty refunds on entries that have already liquidated, even if the tariff later proves unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365–66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

28. In the case of IEEPA Duties, this Court has asserted its authority to order reliquidation. *See AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, 2025 WL 3634261, at *4 (Ct. Int'l Trade Dec. 15, 2025). The United States previously stipulated in specific cases not to challenge that authority. *See, e.g., id.* at *3–4.

29. The United States subsequently confirmed that its commitment not to challenge reliquidation of IEEPA Duties applied to all "similarly situated" plaintiffs. However, despite this confirmation, and concerningly for plaintiffs considering the necessity of immediately forestalling liquidation to ensure complete recovery, continuing into January 2026, the United States reserved the right to challenge whether a party was, in fact, similarly situated or "otherwise entitled to relief." Defendant's Response to Court's January 8, 2026 Letter at 2, *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255 (Ct. Int'l Trade Jan. 8, 2026) (ECF No. 34).

30. Subsequently, at a public hearing in one IEEPA refund case on March 4, 2026, the United States clarified its position that plaintiffs "similarly situated" to the plaintiff in the *AGS* case was a concept interpreted by the United States broadly to encompass all of the over 2,000 such IEEPA Duty refund cases then filed. The United States represented during that March 4th public hearing that it would refund all IEEPA Duties owed once a final order was issued in each such refund case filed with this Court, regardless of liquidation status.

31. Plaintiff, in reliance on the cumulative strength of the foregoing public statements made by the United States regarding its position on reliquidation of IEEPA Duties, will therefore not seek preliminary injunctive relief to forestall such liquidation with the filing of this Complaint. Plaintiff reserves the right to request such relief going forward should further events indicate it necessary to accomplish complete relief.

***Plaintiff Paid Unlawfully Levied IEEPA Duties***

32. Plaintiff's merchandise subject to IEEPA Duties entered the United States under HTSUS provisions from foreign countries.

33. Plaintiff consistently paid the United States these IEEPA Duties on its entries.

34. As discussed above, the Supreme Court held that IEEPA does not authorize the President to impose tariffs. *See Learning Resources*, slip op. at 20–21. The powers that IEEPA does confer, including the powers to investigate and "regulate" importations, do not extend to the authority to impose tariffs. *See* 50 U.S.C. § 1701(a). *See also Learning Resources*, slip op. at 16 ("Our task today is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").

35. Because the executive orders under which the IEEPA Duties were levied were *ultra vires*, those duties were void *ab initio* as to Plaintiff.

## V. CAUSES OF ACTION

### Count I: The IEEPA Duties were *ultra vires* under *Learning Resources*.

36. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if fully set forth herein.

37. Under the Supreme Court's decision in *Learning Resources*, the President's imposition of duties under IEEPA exceeded the authority granted by the statute and was therefore unlawful. *See Learning Resources*, slip op. at 16, 20–21.

38. Consequently, Plaintiff seeks monetary or injunctive relief, as this Court deems appropriate, refunding all amounts previously paid under any IEEPA Duty, regardless of liquidation status, with interest at the legal rate.

### Count II: Declaratory relief under 28 U.S.C. § 2201.

39. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if fully set forth herein.

40. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

41. Plaintiff is an importer of record who suffered actual injury by paying IEEPA Duties.

42. Plaintiff's claims present an actual controversy as to Defendants' obligation to refund all IEEPA Duties paid by plaintiff, regardless of liquidation status, with interest at the legal rate.

43. Plaintiff is entitled to declaratory judgment to that effect, which this court may issue under 28 U.S.C. § 2201 and its own inherent equitable authority.

**PRAYER FOR RELIEF**

44. WHEREFORE, Plaintiff prays for judgment in its favor that:

a. Declares that the collection by Defendants of IEEPA Duties is and was *ultra vires* and *void ab initio* with respect to Plaintiff;

b. Declares that with respect to Plaintiff, Defendants' must refund all money paid by Plaintiff to the United States under the IEEPA Duties, with interest at the legal rate, regardless of liquidation status;

c. Orders Defendants to refund to Plaintiff all IEEPA Duties paid by Plaintiff to the United States, regardless of liquidation status, with interest at the legal rate; and

d. Awards Plaintiff the costs of suit incurred herein and such other and further relief as this Court deems appropriate and just under the circumstances.

Dated: August 31, 2026

**COZEN O'CONNOR**

/s/

Heather L. Marx (MN Bar #321163)
Thomas G. Wallrich (MN Bar #0213354)
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 260-9002
hmarx@cozen.com
twallrich@cozen.com

Brett Crow (PA Bar#334566)
One Liberty Place, 1650 Market Street Suite 2800
Philadelphia, PA 19103
(215) 821-1754
bcrow@cozen.com

*Attorneys for Plaintiff*